UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:26-CV-00524-MEO-WCM

LEIDSEPLEIN PRESSE B.V. AND
PERRYSCOPE PRODUCTIONS, LLC,

Plaintiffs,

v.

ABC COMPANIES AND
JANE/JOHN DOES,

Defendants.

MEMORANDUM & ORDER

**THIS MATTER** is before the Court on Plaintiffs' *Ex Parte* Motion for an Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order and Order of Seizure. (Doc. No. 7). For the reasons set forth below, the Court *sua sponte* dismisses Plaintiffs' case for lack of subject-matter jurisdiction and denies the motion as moot.

## I.    BACKGROUND

Plaintiff Perryscope Productions, LLC ("Perryscope") is the exclusive merchandiser for the musical group known as AC/DC. (Doc. No. 8-2; Metzler Decl. ¶ 1). AC/DC is embarking on a concert tour of the United States, beginning in Charlotte, North Carolina on July 11, 2026. (Doc. Nos. 1 ¶ 12; 1, Exh. A). Perryscope received the exclusive right to sell merchandise bearing the AC/DC trademarks, logos, and likeness at concert venues across the United States pursuant to a license agreement with Plaintiff Leidseplein Presse B.V.—the owner of the AC/DC trademarks. (Doc.

No. 8-2 ¶ 6).

In preparation for the tour, Plaintiffs filed a Complaint against "unidentified and unidentifiable defendants" commonly referred to as "'bootleggers' of merchandise, who without permission or authorization, misappropriate the names, likenesses, logos, symbols, artwork, and/or trademarks of performing artists and musical groups for use on merchandise that the 'bootlegger' . . . peddle[s] to the general public." (Doc. No. 8-1; Feinswog Decl. ¶¶ 3, 6). The Complaint alleges violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114.

Plaintiffs subsequently filed their *Ex Parte* Motion for an Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order and Order of Seizure. (Doc. No. 7). Plaintiffs ask the Court to restrain these "unidentified and unidentifiable defendants" from "manufacturing, distributing and selling their infringing and imitative AC/DC merchandise" outside of concerts on the tour. (Doc. No. 7 at 1). Plaintiffs further ask the Court to order the U.S. Marshal and other law enforcement authorities to seize and impound any and all infringing AC/DC merchandise sold within a five-mile radius of the scheduled concerts. (Doc. Nos. 7 at 1; 7-1; Proposed Order at 2). For the reasons explained below, the Court *sua sponte* dismisses the case for lack of subject-matter jurisdiction and denies Plaintiffs' motion as moot.

## II.   DISCUSSION

Plaintiffs argue this Court has the authority "through its grant of equity

2

power" to issue an *ex parte* temporary restraining order and seizure order. (Doc. No. 8 at 9, 11). They maintain "[a]n equitable remedy is a blend of what is necessary, what is fair and what is workable" and urge the Court to "look at the practical realities and necessities involved in reconciling competing interests." (Doc. No. 8 at 11).

But "[f]ederal courts are courts of limited jurisdiction" which "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). This Court is not therefore bound by "practical realities" and party-imposed "necessities." It appears to the Court that Plaintiffs seek "a mechanism under which to seize and impound the allegedly bootleg merchandise to be sold by the unnamed defendants." *Rock Tours, Ltd. v. Does*, 507 F. Supp. 63, 66 (N.D. Ala. 1981). Although the Court can appreciate Plaintiffs' frustration with illegal bootleg merchandise on the market and the complained of impact on the performers in the entertainment industry, this Court cannot provide Plaintiffs with the mechanism it seeks. *Live Nation Merch., Inc. v. Does*, No. 18cv2703-GPB(JLB), 2018 WL 6326321, at \*4 (S.D. Cal. Dec. 4, 2018) (recognizing "the difficulty in combatting bootleggers at high profile concerts" but acknowledging that "the Court has a duty mandated by the U.S. Constitution to determine whether it has jurisdiction over a case"). Federal courts can resolve concrete disputes between plaintiffs and identified defendants; they cannot issue decrees that bind the world at large.

Plaintiffs' Complaint and motion do not identify any defendant. Instead, the Complaint names "Various John Does and Jane Does" who "are not presently known"

(Doc. No. 1 ¶ 3) and "ABC Companies" that "are not presently known." *Id.* ¶ 4. Plaintiffs allege these unidentified defendants reside in, transact business in, or will be present in North Carolina as well as the other states where AC/DC will perform on its tour. *Id.* ¶¶ 3, 4. Plaintiffs further allege "Defendants are numerous independent, unlicensed peddlers and manufacturing and distributing companies who will be attempting to distribute and sell unauthorized bootleg and inferior merchandise." *Id.* ¶ 7. However, Plaintiffs note "Defendants are not presently known and cannot be known unless they voluntarily permit themselves to be identified." *Id.*

Article III of Constitution extends the judicial power of the federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2; *Flast v. Cohen*, 392 U.S. 83, 94 (1968). "[I]t is elemental that there must be parties before there is a case or controversy." *Ellis v. Dyson*, 421 U.S. 426, 434 (1975). Although "John Doe" suits are allowed in federal courts, they are not without parameters. For instance, "if it does not appear that the true identity of an unnamed party can be discovered through discovery or through intervention by the court, the court could dismiss the action without prejudice." *Schiff v. Kennedy*, 691 F.2d 196, 198 (4th Cir. 1982). In other words, "John Doe suits are permissible only against 'real, but unidentified, defendants.'" *Chidi Njoku v. Unknown Special Unit Staff*, 217 F.3d 840 (4th Cir. 2000) (table) (*per curiam*); 13 Wright & Miller's Federal Practice & Procedure § 3530 (3d ed. 2008) ("There also must be an identifiable defendant, who can be served and offered the opportunity to appear as adversary.").

Further, "[t]he Judiciary Act of 1789 endowed federal courts with jurisdiction

4

over 'all suits . . . in equity, and still today, this statute 'is what authorizes the federal courts to issue equitable remedies.'" *Trump v. CASA, Inc.*, 606 U.S. 831, 841 (2025) (citation modified). Congress has not granted federal courts the power to issue a "universal injunction" as an exercise of equitable authority. *Id.* In fact, "a federal court exercising its equitable authority may enjoin named defendants from taking specified unlawful actions. But under traditional equitable principles, no court may 'lawfully enjoin the world at large.'" *Whole Woman's Health v. Jackson*, 595 U.S. 30, 44 (2021).

Plaintiffs' motion does not identify any particular defendant that has acted to infringe upon Plaintiffs' rights. Instead, Plaintiffs "identify the defendants only by describing the behavior that plaintiffs want to stop—namely, the unauthorized sale of [bootleg AC/DC] merchandise near the performer's concert venues around the time of [the] concerts." *Stensrud, Inc. v. Does*, 805 F. Supp. 3d 440, 445 (E.D.N.Y. 2025). Therefore, "there is no justiciable case and controversy at this time." *Live Nation Merch., Inc. v. Does*, No. CV 15-3762-GHK (Ex), 2015 WL 12672733, at *1 (C.D. Cal. May 21, 2015); *see also Rock Tours, Ltd.*, 507 F. Supp. at 66 (denying the plaintiffs' application for temporary restraining order, in part, because the action was not justiciable when the plaintiffs had no adversaries in the court). Additionally, "[s]uch an injunction against 'John Doe' defendants is no different than an injunction that forbids 'the world at large' from selling [AC/DC] merchandise near concert venues around concert times." *Stensrud*, 805 F. Supp. 3d. at 445–46.

What's more, the Plaintiffs have not suggested how the identities of the

Defendants can be obtained through discovery or through intervention by the Court. Instead, Plaintiffs would have the Court deputize what amounts to a U.S. Marshals bootlegging task force, comprised of federal, state, and local law enforcement. With the Court's imprimatur, this task force would patrol the surroundings of thirteen different stadiums across twelve states, identify on their own authority who is selling unlicensed merchandise, and seize that person's property on the spot—all without any prior judicial determination that the particular person seized from has infringed anything.

But field enforcement of trademark violations is not a role the Constitution assigns to Article III courts. "It is emphatically the province and duty of the judicial department to say what the law is," *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803) (Marshall, C.J.), not to police compliance with it in the field. Determining, case by case and on the spot, whether a particular vendor's t-shirt infringes the AC/DC marks—and then directing that the vendor's goods be seized before any court has made that determination—is the work of an enforcement agency applying a legal standard to facts as they arise, not the work of a court resolving a case or controversy between identified parties. Plaintiffs' proposed order would have this Court authorize just that kind of ongoing, roving enforcement activity, carried out by officers in the field rather than adjudicated by the Court. Whatever authority Congress has given law enforcement to combat counterfeiting through criminal process, *see* 18 U.S.C. § 2320 (Trafficking in counterfeit goods or services), it is not this Court's function to convert itself, or the officers who would act under its order, into the enforcement

6

mechanism for a civil trademark claim against defendants who have not yet been identified, let alone found liable.

For these reasons, the Court *sua sponte* dismisses the case for lack of subject-matter jurisdiction and denies Plaintiffs' motion as moot.

## III.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that Plaintiffs' case is *sua sponte* dismissed without prejudice for lack of subject-matter jurisdiction. Plaintiffs' *Ex Parte* Motion for an Order to Show Cause on Motion for Preliminary Injunction with Temporary Restraining Order and Order of Seizure (Doc. No. 7) is denied as moot. The Clerk is directed to close this case in accordance with this Order.

**SO ORDERED.**

Signed: July 7, 2026

Matthew E. Orso
United States District Judge

7